## SCROGGIN v. GRIFFIN et ux.

No. 28840.　　Sept. 26, 1939.

Jay C. Huffman and R. H. Mills, for plaintiff in error.

Crump & Carver and Billingsley & Kennerly, for defendants in error.

CORN, J. This is a habeas corpus action brought by the maternal grandparents of Wendell Scroggin against his father, Joel Scroggin, for the custody of the said Wendell Scroggin, a boy nine years of age.

Joel Scroggin married Rachel Griffin May 14, 1922, she being the daughter of R. H. and Fannie Griffin, the plaintiffs. On December 22, 1929, Rachel Scroggin died, at which time Wendell Scroggin was an infant of only a few months of age. Soon after this bereave-

ment the father and infant son took up their abode with these grandparents, where the child could have the care of its grandmother, the said Joel Scroggin renting out his own home and moving in with the Griffins in order that he might be a constant companion of his child. This arrangement was agreeable to all parties, and so far as the record shows they lived together in perfect harmony until December, 1937, when Joel Scroggin married his second wife and re-established his home and took his son with him. The grandparents did not want to give up the exclusive custody of the child to its father, and brought this action to establish their right to its custody, basing their claim upon the circumstances above stated.

The court found that the care, custody, and education of the child should be entrusted to the father and so ordered, but qualified the order by the further order that the grandparents should have the custody of the child from June 3, 1937, the day the order was entered, until September 1, 1937, at which time custody should be returned to the father, Joel Scroggin; and that thereafter they should have the care and custody of said child at all reasonable times when he is not in school. From the unfavorable portion of the judgment, the defendant appealed.

The right of the father to the custody of his child is superior to that of grandparents, unless it is shown conclusively that the father is unfit as to character and habits and is incapable of providing for the child's support, and for its intellectual and moral development. This court in many decisions has laid down rules defining the powers of the courts in cases involving the custody of children. In the case of Brooks v. Preston, 134 Okla. 272, 273 P. 345, where the contest was between the father and the grandparents of the child, the court said:

" 'In a contest between the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown this his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at the parent's hands.' Lynch v. Poe, 53 Okla. 595, 157 P. 907; Jamison v. Gilbert, 38 Okla. 751, 135 P. 342; 47 L. R. A. (N. S.) 1133; Hedtke v. Kukuk, 93 Okla. 264, 220 P. 615."

In the case of Breckenridge v. Breckenridge, 103 Okla. 261, 229 P. 774, this language is used:

"In order to justify a court in depriving a parent of the care and custody of his child, the evidence offered to establish the unfitness of the parent must be clear and conclusive, and sufficient to show the necessity for so doing to be imperative."

And in Jamison v. Gilbert, 38 Okla. 751, 135 P. 342, the court said:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that his minor child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody."

The evidence in the case shows that Joel Scroggin, the father of this child, is a man of high moral character and that he owns his home and is financially able to support and educate him, and that his wife is a woman of excellent character and of Christian ideals, and is capable, along with her husband, of providing a home for the child in which his physical welfare and his intellectual and moral development is reasonably assured. The trial court found in favor of the father, but in order to alleviate the suffering of the grandparents which would result from depriving them of the child's custody entirely, the court ordered a division of custody as above set out. In his remarks the trial court said:

"I can strike the heart cord of these old folks and give this child to Joel Scroggin exclusively under the law, but my conscience will not let me, and here I am making a little law of my own, and I trust all the parties to this litigation will live up to this order."

Under the evidence in this case it was the duty of the court to award full custody of the child to its father, Joel Scroggin. The judgment of the trial court is therefore modified and reversed insofar as it fails to give full custody of the child to its father, and this cause is remanded, with directions to enter judgment for exclusive custody of Wendell Scroggin to his father, Joel Scroggin.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, HURST, and DANNER, JJ., concur. WELCH, V. C. J., and DAVISON, J., absent.